The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7                          IN THE UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
8

| | |
|---|---|
| PATRICK COLACURCIO, MARIS and DAVID HANSON, and JAMES McMURCHIE, individually and on behalf of all others similarly situated; | NO. 2:20-cv-01856-RSM |
| Plaintiffs, | PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| INSIGHT VENTURE PARTNERS VII, L.P., a Cayman Islands limited partnership; INSIGHT VENTURE PARTNERS (CAYMAN) VII, L.P., a Cayman Islands limited partnership; INSIGHT VENTURE PARTNERS VII (CO-INVESTORS), L.P., a Cayman Islands limited partnership; INSIGHT VENTURE PARTNERS (DELAWARE) VII, L.P., a Delaware limited partnership; INSIGHT VENTURE PARTNERS COINVESTMENT FUND II, L.P., a Delaware limited partnership; INSIGHT VENTURE ASSOCIATES VII, L.P., a Delaware limited partnership; INSIGHT VENTURE ASSOCIATES VII, LTD., a Cayman Islands limited company; INSIGHT VENTURE ASSOCIATES COINVESTMENT II, L.P., a Delaware limited partnership; INSIGHT VENTURE MANAGEMENT, LLC, a Delaware limited liability company; INSIGHT HOLDING GROUP, LLC, a Delaware limited liability company, and RYAN HINKLE, | NOTE ON MOTION CALENDAR: May 11, 2022 |
| Defendants. | |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1

**INTRODUCTION**

2      After over two years of hard-fought litigation, review of more than 60,000 pages of

3  discovery, a fully-briefed class certification motion, and extensive settlement negotiations led

4  by an experienced mediator, Plaintiffs reached a Settlement with Defendants that would

5  favorably resolve this litigation. Under the terms of the settlement, Defendants will pay

6  $26.2 million into a fund for the benefit of the Settlement Class. Subject to Court approval, the

7  settlement fund will be used to make direct payments to members of the Settlement Class, as

8  well as to cover notice and administration costs, service awards, and attorneys' fees and costs.

9      To date, the reaction of the class to this Settlement has been extraordinarily positive.

10  Only two class members requested exclusion and currently no class members have objected to

11  the settlement. This strong indication of Class Member support is a testament to the substantial

12  monetary benefits the settlement confers on the Settlement Class. Participating Class Members

13  who sold shares of stock in the 2017 tender stand to approximately double the amount they

14  received for their shares sold in 2017. For some class members, this means their proportionate

15  share of the settlement is over a million dollars. The proposed Settlement is an outstanding

16  result for the class, reached through arm's-length negotiations after contested litigation by

17  experienced and well-informed counsel. Because the proposed Settlement is fair, reasonable,

18  and adequate, and because it satisfies all the requirements of Rule 23, the Court should grant

19  final approval.

20

**BACKGROUND**

21  **I.     Overview of Plaintiffs' claims.**

22      This case centers on a transaction involving shares of Smartsheet Inc. From its founding

23  in 2005 until its April 2018 IPO, Smartsheet was privately-held, and its shares could not be

24  resold or transferred without the consent of the company.[1] Defendants (collectively, with the

25  _____

26      [1] *See* Smartsheet Inc., Form S-1 at 1, 9 (Mar. 26, 2018), *available at* https://www.sec.gov/Archives/edgar/data/0001366561/000162828018003554/smartsheets-1. htm; Bylaws of Smartsheet, Inc. § 6.5 (March 26, 2018) (Exhibit 3.3 to Smartsheet, Inc.'s Form

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  exception of Defendant Ryan Hinkle, referred to as "Insight") are a collection of private equity

2  funds that invest money from outside investors, as well as limited liability companies and

3  partnerships that manage those investments. Defendant Ryan Hinkle is a principal of Insight

4  and was a member of Smartsheet's Board of Directors.

5    This case revolves around a 2017 tender offer (the "Tender Offer"), in which Insight

6  purchased shares of Smartsheet directly from existing Smartsheet shareholders—including

7  Plaintiffs and the Settlement Class. *See* Dkt. 1-1 ("FAC") ¶ 61. Plaintiffs allege that during the

8  Tender Offer, Insight omitted material, nonpublic information in its possession concerning

9  Smartsheet's forthcoming IPO plans. Plaintiffs and the putative class asserted four claims

10  against Defendants relating to Insight's alleged misconduct in the 2017 Tender Offer:

11  (1) violation of the Washington State Securities Act ("WSSA"), RCW 21.20.430(2); (2) control

12  personal liability under the WSSA, RCW 21.20.430(3); (3) breach of fiduciary duty against

13  Mr. Hinkle; and (4) unjust enrichment. *Id.* ¶¶ 81–83.

14  **II.    Overview of the litigation.**

15    **A.    Plaintiffs fended off Defendants' early efforts to end the litigation.**

16    Plaintiffs filed this lawsuit in Washington State Superior Court (King County) in

17  December 2019. In March 2020, Defendants filed a motion to dismiss all claims, which that

18  court denied on May 1, 2020. *See* Dkt. #1 at 398–412. In June 2020, the First Amended Class

19  Action Complaint added current named Plaintiffs the Hansons and Mr. McMurchie.

20    In early May 2020, after the Court denied Defendants' motion to dismiss, Insight

21  attempted to end the case extrajudicially: it began a campaign to get waivers from putative

22  class members as to those putative class members' rights not only to participate in this class

23  action, but to sue Insight on an individual basis. Dennett Decl. ¶ 12. Plaintiffs were forced to

24  seek relief from the court pursuant to Rule 23(d). Finding Defendants made misleading

25

26  S-1), *available at* https://www.sec.gov/Archives/edgar/data/1366561/000162828018003554/
exhibit33s-1.htm.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 2

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

statements to members of the Class, the Court invalidated all the waivers Insight had obtained. *See* Dkt. #1 at 707–11 (Order Granting in Part and Denying in Part Pl.'s Mot. for Relief Under Civil Rule 23(d)).

**B.    Defendants' attack on named Plaintiff Hanson**

In December 2020, Defendants removed this case to federal court. *See* Dkt. #1. In March 2021, Defendants filed a motion for judgment on the pleadings as to Plaintiff David Hanson, arguing that he released his securities fraud claims against Insight in an employment separation agreement with his former employer Smartsheet. Plaintiffs opposed the motion, and the motion remains fully briefed. *See* Dkt. ## 17, 27, 34. Following briefing on the motion for judgment on the pleadings, Smartsheet Inc. commenced an arbitration against Mr. Hanson on the basis that its form Employment Separation Agreement, which Mr. Hanson signed when he left Smartsheet's employ in 2017, barred him from bringing claims in this litigation. Dennett Decl. ¶ 18.

**C.    Plaintiffs engaged in extensive and contested discovery**

Both before and after removal, the Parties engaged in extensive discovery. Plaintiffs issued—and collected documents in response to—twelve subpoenas to nonparty witnesses, including document subpoenas to Smartsheet and its directors Mark Mader, Brent Frei, Jim White, and Matt McIlwain; the Parties also conducted broad document discovery between themselves. *See* Dennett Decl. ¶ 15. Each of these subpoenas required extensive meet and confer efforts before Counsel was successful in compelling production of documents. *Id.* ¶ 16. Ultimately, Plaintiffs' discovery efforts resulted in the collection of over 95,000 documents from Defendants and non-parties. *Id.* ¶ 15.

Class Counsel expended significant time and resources reviewing and analyzing Defendants' document production and privilege logs. *Id.* ¶ 16. Class Counsel analyzed thousands of documents, and document review efforts remained ongoing through the time of settlement negotiations. *Id.* In addition, the parties engaged in deposition discovery. Plaintiffs

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 3

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  deposed Defendant Ryan Hinkle, and Defendants deposed each of the three named Plaintiffs.

2  *Id.* ¶ 17. Additionally, Plaintiffs noted the depositions of Smartsheet CEO Mark Mader and

3  former Smartsheet CFO Jennifer Ceran. *Id.* Defendants moved for a protective order, seeking to

4  prevent those depositions until after the Court ruled on Plaintiffs' motion for class certification.

5  *See* Dkt. ## 85, 88, 90.

6      **D.    Class Certification and Expert Analysis**

7          In April 2021, Plaintiffs filed a motion for class certification, which Defendants

8  opposed. The motion, and the related motions to seal, are also fully briefed. *See* Dkt. ## 38, 40,

9  53, 56, 59, 60, 72, 74, 76, 80, 83, 84. In conjunction with their motion for class certification,

10 Plaintiffs retained and worked extensively with consulting and testifying experts, including an

11 expert to assess Smartsheet's IPO plans and provide opinions on the Defendants' disclosures

12 regarding what they knew about Smartsheet's IPO plans at the time of the Tender Offer.

13 Dennett Decl. ¶ 19.

14     **E.    Overview of settlement negotiations.**

15         After engaging in some preliminary discovery, the Parties attended mediation in

16 September 2020. *See* Dennett Decl. ¶ 11. The Parties were unable to reach agreement, and the

17 case proceeded forward with further discovery, motions practice, and class certification

18 briefing.

19         In the summer of 2021, while the Court's decision on the motion for judgment on the

20 pleadings, motion for class certification, and motion for protective order were pending, the

21 Parties again engaged in arm's-length settlement negotiations, starting with a mediation session

22 on August 4, 2021 with Robert A. Meyer, Esq. of JAMS. *See* Dennett Decl. ¶ 20. While the

23 mediation was unsuccessful that day, negotiations continued in the following weeks facilitated

24 with the assistance of Mr. Meyer. *Id.* On September 22, 2021, the Parties reached a preliminary

25 agreement. *Id.* In the following months, the Parties engaged in additional negotiations on terms

26

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of a written settlement agreement. *Id.* The parties finalized the terms of their proposed settlement and executed the Agreement on November 18, 2021. *Id.*

## III. The Settlement terms.

For the Court's convenience, the key terms of the Agreement are briefly summarized as follows:

**A.     The Settlement Class:** The Settlement Class is defined as follows:

> All individuals and entities who sold stock in Smartsheet, Inc. in connection with the tender offer for stock of Smartsheet, Inc. dated June 2, 2017. Excluded from the Settlement Class are (1) the Defendants and all of their respective employees, officers, directors, agents, immediate family members, legal representatives, parent corporations, subsidiaries, controlled affiliates, insurers, guarantors, heirs, successors, and assigns, (2) all other Smartsheet shareholders who offered to purchase shares in the June 2017 tender offer, (3) Mark Mader, Brent Frei, Kara Hamilton, and Andy Lientz, (4) the Judge presiding over this Action and all members of her or his family, (5) and persons who timely and validly request exclusion from the Settlement Class.

Stipulation and Agreement of Settlement ("SAS"), Dkt. #92-1, ¶¶ 1(s), (v), 3.

**B.     Monetary benefits:** In exchange for the dismissal of this action and the release in the Settlement, Defendants have agreed to pay $26,200,000.00, to be used for direct payments to Settlement Class Members (the "Settlement Fund"), after deductions of Court-approved attorneys' fees and expenses, service awards, and administration costs. Settlement ¶ 7. This is a non-reversionary fund, meaning that no portion shall revert to Defendants unless the Settlement is voided, cancelled, or terminated. *Id.* ¶ 7(g). Payments to Settlement Class Members—those who do not opt out—will be made by check mailed to them at their last known address. *Id.* ¶ 7(h)(iv). Each Settlement Class Member will receive their pro rata share of the Net Settlement Fund based on their participation in the Tender Offer. *Id.*[2]

---

[2] Because some participants in the Tender Offer tendered preferred shares for a higher payment, their WSSA damages—which take into account the amount a plaintiff received for his or her shares—would be proportionally less. The Settlement takes those proportions into account in distributing the Net Settlement Fund. SAS ¶ 7(h)(iv).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 5

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

**C.     Releases of liability:** In exchange for the relief described above, Defendants and non-party Smartsheet, Inc. will receive a full and final release of all claims related to the Tender Offer. *See id.* ¶ 11. In addition, Defendants have agreed to release Plaintiffs and Settlement Class Members for any claims they may have had related to the Tender Offer.

**D.     Attorneys' fees and expenses, costs, and service awards:** Contemporaneously with the filing of this motion, Class Counsel are filing a motion for attorneys' fees, expenses, and service awards.

## IV.     Agreements required to be identified under Rule 23(e)(3)

Plaintiffs previously detailed the terms of certain related agreements under Rule 23(e)(3) in their Motion for Preliminary Approval. *See* Dkt. #91, at 7–8. Since filing that motion, the Parties have not executed any additional agreements. Dennett Decl. ¶ 23. As disused in the Motion for Preliminary Approval, and as submitted to the Court under seal, the Parties executed a confidential Supplemental Agreement, which provides the Parties with certain rights to terminate the Settlement. *See id.* ¶ 21; Dkt. #91, at 7–8; Dkt. #96. These termination provisions have not been triggered and have now lapsed. Dennett Decl. ¶ 21.

## V.     Administration of Notice

Since this Court granted Preliminary Approval of the Settlement, Class Counsel has worked with the Settlement Administrator, Angeion, to ensure that notice and claims processes proceeded smoothly. Class Counsel regularly conferred with Angeion regarding the progress of the notice plan and claims response, and they responded to inquiries from Class Members about the Settlement. Dennett Decl. ¶ 29. Class Counsel will continue to expend time and effort to ensure that Class Members receive their benefits from the Settlement. *Id.*

Following the Court's Order, Angeion sent notice via email and physical mail to all members of the Class at the best available address for each Class Member. Cudworth Decl. ¶¶ 4–8. The mail and email notice efforts were enormously successful: Angeion has received no undeliverable mail notices, and only one undeliverable email notice. *Id.* ¶¶ 6, 8. On January

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

14, 2022, Angeion established the settlement website (ivpclassactionsettlement.com), where Class Members can view and print the Notices, the Settlement Agreement, the Order Granting Preliminary Approval of the Settlement as well as other case documents. *Id.* ¶ 9. Angeion has maintained and updated the settlement website, which will be live throughout the remainder of the settlement administration process. *Id.*

## VI.    Response of Class Members to the Notice

The deadline to request exclusion elapsed on March 4, 2022, and only two members of the Class requested exclusion. Cudworth Decl. ¶ 13. As of the filing of this Motion, no member of the class has submitted an objection. *Id.* ¶ 14. The low numbers of opt-outs and absence of any objections attests to the effectiveness of the notice process, the strength of the terms of the settlement, and the engagement of the Class.

## AUTHORITY

Plaintiffs respectfully request that the Court grant final certification of the Class as a settlement class because: (1) the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3); (2) the Court-approved notice program satisfies both Rule 23 and due process requirements and has been fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

## I.    Class certification remains appropriate for this Settlement Class.

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). The Court completed this first step in the settlement approval process when it granted preliminary approval of the Settlement and provisionally certified the corresponding Settlement Class. *See* Dkt. #91. The Court's Preliminary Approval Order made specific findings that the Class meets each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *Id.* at 18–21. Likewise, the Court found that the Settlement Class met each of the Rule 23(b)(3) requirements: that questions of law and fact common to the members of the class predominate

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

over any "questions affecting any individual Class Member," and that a class action is superior to other available methods of fairly and efficiently adjudicating this controversy. *Id.* at 21–22. Plaintiffs respectfully submit that nothing has changed since these findings were made, and they remain accurate. Because no relevant facts have changed since the Court certified the Settlement Class, Dkt. #91, the Court need not revisit class certification here. *See, e.g.*, *Ewing v. Admin. Sys., Inc.*, C08-0797 RAJ, 2009 WL 10725426, at *1 (W.D. Wash. Sept. 30, 2009); *Jamil v. Workforce Res., LLC*, 2020 WL 6544660, at *3 (S.D. Cal. Nov. 5, 2020).

## II. Notice was successful and satisfied due process.

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3 (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The Court already provisionally approved the Notice Plan proposed by Plaintiffs and Class Counsel, including the forms of Plaintiffs' Email Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. The Court also approved of Plaintiffs' proposed manner of distribution of notice forms as compliant with the requirements of Rule 23 and due process.

Plaintiffs' implementation of that Notice Plan was successful in all aspects. In compliance with the Court's instructions, on January 14, 2022, the Settlement Administrator, Angeion, mailed Long Form Notices to the best available addresses for each member of the Settlement Class. Cudworth Decl. ¶ 5. The same day, Angeion emailed the Email Notices to the best available email addresses for each member of the Settlement Class. *Id.* ¶ 7. Angeion also

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    established a settlement website, which became operational on January 14, 2022 and will

2    remain live throughout the remainder of the settlement administration process. *Id.* at ¶ 9.

3    Among other things, the Settlement Website includes general information regarding the

4    Settlement, lists the key deadlines, and contains copies of the Long Form Notice, the

5    Stipulation and Agreement of Settlement, the Amended Complaint, the Answer to the

6    Amended Complaint, and the Preliminary Approval Order, as well as Frequently Asked

7    Questions and their answers. *Id.*

8         To ensure the notice reached each member of the class, Class Counsel thoroughly

9    investigated and vetted the Class List, and made efforts to engage directly with all members of

10   the proposed class before the Notice Date to verify current and best contact information.

11   Dennett Decl. ¶ 30. Class Counsel successfully reached over 70% of the proposed class via

12   phone call or email, and were able to confirm and update contact information for the class

13   members prior to sending out notice to the class. *Id.* Class Counsel worked cooperatively with

14   counsel for Smartsheet to identify best available email addresses for some members of the

15   class. *Id.* To the extent Counsel received updated contact information, they provided it to

16   Angeion, who used to send notice. *Id.*

17        Finally, all forms of notice accurately described the Settlement and directed the

18   recipient to the Settlement Website where further information was available. The Court's

19   Preliminary Approval Order already found that the form of the Email Notice, the Long Form

20   Notice, and the proposed Notice Plan each complied with Rule 23 and due process

21   requirements, and the Claims Administrator complied with the Order regarding Administration

22   of Notice. There have been no issues noticing the Settlement Class or complying with the

23   court-ordered Notice Plan. *See* Cudworth Decl. ¶¶ 6, 8. The Court should therefore find that the

24   Notice Plan, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process

25   requirements.

26

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    **III.    The Court should finally approve the settlement.**

2           The Ninth Circuit recognizes the "strong judicial policy that favors settlement,

3    particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516

4    F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th

5    Cir. 1992). The strong preference for class action settlements is precipitated by the

6    overwhelming uncertainties of the outcome, expense, management, and difficulties in proof

7    inherent in class action lawsuits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

8    Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever

9    increasing burden to so many federal courts and which frequently present serious problems of

10   management and expense"). The Court's standard inquiry is whether the proposed settlement

11   "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

12   1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than

13   the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d

14   at 1026 (internal citation omitted).

15          To approve the settlement of a class action as fair, reasonable, and adequate, Rule

16   23(e)(2) requires Court to consider "whether (A) the class representatives and class counsel

17   have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the

18   relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of

19   trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

20   including the method of processing class-member claims; (iii) the terms of any proposed award

21   of attorney's fees, including timing of payment; and (iv) any agreement required to be

22   identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to

23   each other." At the final approval stage, the court considers the settlement light of a non-

24   exhaustive list of factors—the so-called *Churchill* factors—including:

25           (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
             duration of further litigation; (3) the risk of maintaining class action status
26           throughout the trial; (4) the amount offered in settlement; (5) the extent of

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018). Not surprisingly, there is overlap between the 23(e) fairness, reasonableness, and adequacy considerations and the factors set out in the Ninth Circuit test in *Churchill*, 361 F.3d at 575. The Ninth Circuit has instructed that the court's 23(e)(2) analysis should be guided by the *Churchill* factors. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

As described below, there are no indicia of collusion in the Settlement. To the contrary, the hard-fought nature of the litigation and settlement negotiations, along with the assistance of experienced mediator in the settlement negotiations, demonstrates the lack of collusion. Further, analysis of the relevant factors confirms that the Settlement is substantively fair to the Class and provides the class meaningful relief. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate and grant final approval.

### A. Class Counsel and the Class Representatives have adequately represented the Class and support the Settlement.

Plaintiffs and Class Counsel have adequately represented the Class in connection with both the litigation and the Settlement. Plaintiffs have claims that are typical of, and coextensive with, those of the Class, and they have no interests that are antagonistic to other members of the Class. *See Hanlon*, 150 F.3d at 1020. Indeed, the Plaintiffs share the primary goal with the Class of obtaining the largest possible recovery from Defendants. The Plaintiffs played a very active role throughout the litigation, stepping forward to represent the proposed Class, searching for and producing relevant documents and information, and preparing for and sitting for their depositions. Dennett Decl. ¶ 27. They also retained counsel to assist them who are highly experienced in class action litigation.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Class Counsel diligently represented the Class throughout the course of this litigation. This case was complex and hard-fought at every stage. Class Counsel, who are experienced in representing plaintiffs in class action cases, have spent over two years litigating this case, conducting discovery, and advocating for the Class. As a result of their efforts, the negotiated Settlement provides considerable monetary relief to each of the Settlement Class members. By any measure, Class Counsel's efforts constitute adequate representation of the Class.

**B.     The Settlement has no indicia of collusion and is the result of hard-fought negotiations before experienced mediators.**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). The Ninth Circuit recognizes that approval of a settlement prior to formal class certification presents risks of conflict of interests between Class Counsel and the Class. The Court is thus required to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Here, the time and effort spent on the settlement negotiations and the quantity and quality of information used during those negotiations favor final approval of the Settlement because they strongly indicate that there was no collusion in the result that the parties achieved. Before filing suit, Plaintiffs' Counsel engaged in a rigorous investigation as to both the basis for Plaintiffs' claims and the complicated relationships between the Defendant entities. *See* Dennett Decl. ¶ 3. Immediately after the case was filed, Plaintiffs sought discovery aimed at Smartsheet's IPO plans prior to the Tender Offer, from Defendants and numerous non-parties. *See id.* ¶ 15. Counsel's substantial experience in complex class action litigation also allowed them to negotiate a settlement that they believe is in the best interests of the Settlement Class.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

Moreover, the Settlement was reached with the assistance of a third-party mediator who is well-versed in both class action and securities litigation. *See id.* ¶ 20. After nearly six weeks of negotiation, the parties reached a settlement in principle. *Id.* The fact that the parties reached the Settlement with the assistance of neutral mediators is a "factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. Courts within the Ninth Circuit "have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (internal quotation omitted)); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Finally, the Settlement here has none of the indicia of possible collusion identified by the Ninth Circuit, such as a disproportionate requested attorneys' fee, a "clear sailing" fee agreement separate and apart from class funds, or the reversion of unpaid fees to the defendant. *See In re Bluetooth*, 654 F.3d at 947. Class Counsel's fee will be determined separately, but as explained in Class Counsel's fee petition, they seek a percentage recovery that is consistent with Washington law and Ninth Circuit precedent, reflects their work performed, and is proportionate. Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann II*, 314 F.R.D. at 324–25.

### C.    The Settlement is fair, reasonable, and adequate.

To evaluate the fairness of a settlement, the Ninth Circuit considers the following: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

1   (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

2   (iv) any agreement required to be identified under Rule 23(e)(3).[3]

3        The Advisory Committee notes to the revised Rule 23 make clear that the newly

4   enumerated factors were not intended to replace approval factors already used in courts around

5   the country, but "rather to focus the court and the lawyers on the core concerns of procedure

6   and substance that should guide the decision whether to approve the proposal." Thus, courts

7   examine the new Rule 23 factors alongside the traditional *Churchill* factors, including: (1) the

8   strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

9   litigation; (3) the risk of maintaining class action status through the trial; (4) the amount offered

10  in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

11  experience and views of counsel; (7) the presence of a governmental participant; and (8) the

12  reaction of the class members to the proposed settlement. *In re Online DVD-Rental Antitrust*

13  *Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).[4]

14         **1.    The amount offered in Settlement provides substantial relief to the class.**

15       Here, the total amount of the Settlement—which was the product of vigorous

16  negotiations—is fair, reasonable and adequate in light of the risks the Plaintiffs and Settlement

17  Class faced and the potential damages available. This Settlement provides significant relief to

18  the Settlement Class. The amount of settlement should be judged in context—specifically, in

19  comparison to the amount that could be recovered at trial—adjusted for the risk, expense, and

20  delay of actually going to trial and any potential appeals, including of a class certification

21  order. Thus, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the

22

23  ―――――――――――――

24      [3]    Plaintiffs previously submitted to the Court, under seal, the specific terms of a confidential Supplemental Agreement, which provides the Parties with certain rights to

25  terminate the Settlement. *See* Dkt. # 96. The relevant provisions of the Supplemental Agreement have not been triggered, and thus, the Supplemental Agreement does not affect the analysis of the adequacy of the Settlement.

26      [4]    There is no governmental participant here, so that factor is neutral.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quotation omitted).

Plaintiffs estimate that, not accounting for interest on the WSSA, the Settlement represents 39% of the potential WSSA damages, not including interest, that Settlement Class Members could receive if successful at trial. *See* Dennett Decl. ¶ 24 This is an excellent result, particularly when compared with other securities class action settlements. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-CV-05541-JST, 2020 WL 1786159, at *8 (N.D. Cal. Apr. 7, 2020) (noting "median recoveries of 2.5 percent between 2008 and 2016, and 3 percent in 2017" in large securities class action settlements); Cornerstone Research, Securities Class Action Settlements, 2020 Review and Analysis, at 6 (2020) (noting average 5.3 percent recovery for 2020).

Plaintiffs estimate each Settlement Class Member will receive approximately the same amount as they received for their shares in the 2017 Tender Offer. Dennett Decl. ¶ 25. This represents a substantial recovery for each class member—approximately doubling the amount each class member received in the pre-IPO tender offer transaction. Further estimates confirm the that this amounts to significant amounts of money flowing to members of the Class— Plaintiffs estimate that about a quarter of the Settlement Class Members will receive between $1,000 and $10,000; about a quarter will receive between $10,000 and $50,000; seven will receive between $50,000 and $100,000; fifteen will receive between $100,000 and $500,000; six will receive $500,000 to $1,000,000; and seven will receive over $1,000,000. *Id.* Settlement Class Members need to take no action to receive the Settlement benefits, which will be delivered to them by check. SAS ¶ 7(h)(iv).

### 2. The amount offered in Settlement is adequate, taking into account the strength of Plaintiffs' case and the risks inherent in further litigation.

This recovery is excellent not only because of the valuable benefits obtained for the Settlement Class, but also because Plaintiffs would have faced a significant risk in litigating

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 15

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

this case through trial. When considering whether "the relief provided for the class is adequate," amended Rule 23(e)(2)(C) requires the Court to take into account: "(i) the costs, risks, and delay of trial and appeal." The Court also examines these with consideration of overlapping *Churchill* factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through the trial. *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at \*8 (D. Or. Sept. 19, 2018). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

In considering whether to enter into the Settlement, the Plaintiffs, represented by experienced counsel, weighed the risks in establishing the elements of their claims. *See* Dennett Decl. ¶ 26. Here, Plaintiffs engaged in extensive discovery and, as detailed in their briefing submitted in support of class certification, believe they have built a strong case for liability. However, Defendants continue to deny liability. Plaintiffs and Plaintiffs' Counsel were confident in the strength of their case, but also pragmatic in their evaluation of the risks of continued litigation and the various defenses advanced by Defendants. Through settlement, Defendants continued to dispute key factual issues such as materiality, alleged individual actual knowledge defenses, and even application of Washington law. Plaintiffs believe they have answers to those arguments, including those set out in the various briefing on file with the Court. But uncertainty remains, and given Defendants' significant defenses at summary judgment and trial, proposed Settlement Class Members could have ended up losing the case at or before trial and recovering nothing at all.

Likewise, although Plaintiffs are confident in the strength of their case against Defendants and the likelihood of success at each stage, the outcome of each stage of further litigation would be uncertain due to several pending motions. At the time of settlement, the

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 16

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

Court has not yet ruled on Defendants' motion for judgment on the pleadings, and Plaintiffs faced some risk that the motion would be granted in whole or that the Court would order discovery with respect to the purported release. At the time that the Settlement was reached, Plaintiffs' Motion for Class Certification was fully briefed and argued, but the Court had not yet issued a decision. While Plaintiffs believe that this case is well-suited for class action treatment, there is still a risk that the Court would not grant class certification to some or all of Plaintiffs' claims. The degree of uncertainty surrounding these motions supports preliminary approval. *See Hanson*, 2018 WL 3630284 at *4–5 (finding that uncertain outcome and difficulty of proving damages posed risks to plaintiff's case and weighed in favor of settlement approval).

Even assuming Plaintiffs obtained certification of the Class, they still faced significant risks and delays in maintaining and litigating their class claims. The Ninth Circuit recognizes the inherent risk that a district court "may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class."). Moreover, even if Plaintiffs were successful in obtaining class certification and winning trial in the district court, the risk of one or more lengthy appeals would be high, including a potential interlocutory appeal under Fed. R. Civ. P. 23(f). Accordingly, the risk and uncertainty surrounding certification of the Class also support approval of the Settlement.

Plaintiffs have already spent over $350,000 in costs on this litigation to date, and those expenses would only continue to rise. Dennett Decl. ¶ 38. Continuing to litigate this case through summary judgment, trial, and appeals would have been extremely expensive, and it would have come with the potential to delay recovery for Class Members for many years. And during this period, significant expenses for travel, expert witness fees, deposition reporting and

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 17

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   transcripts, electronic document review, and other litigation expenses would continue to

2   escalate. Without settlement, resolution of this case would take many years and require

3   significant litigation expenses, with result far from certain. *See Hartless v. Clorox* Co., 273

4   F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering

5   these risks, expenses and delays, an immediate and certain recovery for class members,

6   including full relief for property damage or the reimbursement of the cost of the product favors

7   settlement of this action."). The present value of a significant settlement, as opposed to the

8   possibility of a better settlement to be obtained after a trial and appeal many years in the future,

9   supports approval of the Settlement. *See In re Omnivision Techs., Inc*., 559 F. Supp. 2d at 1042.

10           **3.    The proposed method of distributing relief is effective.**

11           Rule 23(e) requires the Court to consider "the effectiveness of any proposed method of

12   distributing relief to the class, including the method of processing class-member claims." Here,

13   the manner in which Settlement Funds will be allocated is simple and efficient. Under the

14   proposed Settlement, participating Settlement Class Members do not have to take any action to

15   receive the Settlement benefits, which will be automatically delivered to them by check. By

16   distributing benefits automatically, the Settlement ensures that relief will be effectively

17   distributed to the Settlement Class. And because the Settlement Fund will be allocated to

18   Settlement Class Members proportionally based on their participation in the Tender Offer, the

19   Settlement benefits will be distributed fairly. *See* SAS ¶ 7(h)(iv).

20           **4.    The terms of the proposed award of attorneys' fees are reasonable and
                     subject to independent court approval.**

21

22           Rule 23(e) also requires the court to consider "the terms of any proposed award of

23   attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement

24   is not contingent on the Court approving any particular fee request. Rather, the Settlement

25   requires that any award for attorneys' fees, expenses, and costs must be precipitated by a

26   motion to, and approval by, the Court. Concurrently with this motion, Class Counsel has

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 18

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  submitted a request for a fee award of 23.5% of the Settlement Fund, in addition to

2  reimbursement of reasonable costs and expenses. For the reasons enumerated in the

3  concurrently-filed fee motion, Class Counsel believe this is a reasonable award of fees and

4  costs in this case, particularly given the duration of this case, the exceptional efforts of Class

5  Counsel, and the outstanding results for the class. And as further explained in Class Counsel's

6  fee motion, they seek a percentage recovery that is consistent with Washington law and Ninth

7  Circuit precedent. The Settlement contains none of the red flags the Ninth Circuit has identified

8  with respect to fees; it has no clear sailing provision, and fees are not subject to reverter. *See In*

9  *re Bluetooth*, 654 F.3d at 947.

10        **5.**    **The extent of discovery completed and the stage of the proceedings**
11            **supports final approval.**

12        Plaintiffs "had enough information to make an informed decision about the strength of

13  their cases and the wisdom of settlement." *Rinky Dink Inc. v. World Bus. Lenders, LLC*, No.

14  C14-0268-JCC, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016); *see also Linney v.*

15  *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Specifically, a "settlement

16  following sufficient discovery and genuine arms-length negotiation is presumed fair."

17  *DIRECTV, Inc*., 221 F.R.D. at 528. Where most of the discovery is completed, "it suggests that

18  the parties arrived at a compromise based on a full understanding of the legal and factual issues

19  surrounding the case." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D. Or. 2016) (quoting

20  *DIRECTV, Inc.,* 221 F.R.D. at 527).

21        The Parties aggressively litigated this case for over two years. Both before and after

22  removal, the Parties engaged in extensive discovery: Plaintiffs deposed Defendant Ryan

23  Hinkle; Defendants deposed each of the three named Plaintiffs; Plaintiffs issued—and collected

24  documents in response to—twelve subpoenas to nonparty witnesses, including document

25  subpoenas to Smartsheet and its directors Mark Mader, Brent Frei, Jim White, and Matt

26  McIlwain; and the Parties conducted broad document discovery between themselves. *See*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 19

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    Dennett Decl. ¶ 15. Plaintiffs' discovery efforts resulted in the collection of over 95,000

2    documents from Defendants and non-parties. *Id.* As a result of the substantive motions practice

3    and extensive discovery, "the proposed settlement was reached only after the parties had

4    exhaustively examined the factual and legal bases of the disputed claims. This fact strongly

5    militates in favor of the Court's approval of the settlement." *DIRECTV, Inc.*, 221 F.R.D. at 528.

6                     **6.    Class Counsel support the Settlement.**

7                Class Counsel are experienced class action litigators and recommend the Settlement as

8    being fair, reasonable and adequate and in the best interests of the Class Members. Dennett

9    Decl. ¶ 26. "Parties represented by competent counsel are better positioned than courts to

10   produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac.*

11   *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Accordingly, "'[g]reat weight' is accorded

12   to the recommendation of counsel, who are most closely acquainted with the facts of the

13   underlying litigation." *Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL

14   2672073, at *6 (D. Or. June 21, 2017) (quoting *DIRECTV, Inc.*, 221 F.R.D. at 528). "Absent

15   fraud or collusion, courts can, and should, rely upon the judgment of experienced counsel for

16   the parties, when assessing a settlement's fairness and reasonableness." *Demmings*, 2018 WL

17   4495461, at *9 (internal quotations omitted). Thus, Class Counsel's recommendation in this

18   action that the Settlement is fair, reasonable, and adequate "strongly favor" approval. *Lane*, 166

19   F. Supp. 3d at 1191.

20               Class Counsel have considered: (1) the complexities of this litigation; (2) the risks and

21   expense of continuing this case through further discovery, the Court's class certification order,

22   summary judgment, and trial against Defendants; and (3) the likely appeal(s) if Plaintiffs do

23   prevail at trial or earlier stages. After weighing these against the guaranteed recovery to the

24   Settlement Class, and what Class Counsel believe to be the significant monetary benefits to the

25   Settlement Class, Class Counsel firmly believe the Settlement represents a desirable resolution

26   of this litigation. Dennett Decl. ¶ 17.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

7.     **The reaction of the Settlement Class has been favorable.**

Finally, the Class has responded favorably to the Settlement, warranting final approval. The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*, 166 F. Supp. 3d at 1191. "When few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable." *Schneider v. Wilcox Farms, Inc.*, No. 07-CV-01160-JLR, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009).

Here, only two class members requested exclusion. Cudworth Decl. ¶ 13. And as of today, no class members have objected. *Id.* ¶ 14. This near total lack of opposition is a strong indication that the class supports the settlement. *See Clemans v. New Werner Co.*, No. 3:12-cv-5186, 2013 WL 12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement where one objection and four exclusions were filed, court found that "the overwhelming non-opposition to and participation in the Settlement [are] strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (concluding that the district court "had discretion to find a favorable reaction" when 54 of 376,301 class members objected to settlement); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8–9 (W.D. Wash. Mar. 26, 2001) (granting final approval where "less than 1% of the class opted out and only nine objections were submitted"); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval where 90,000 notified class members yielded 45 objections and 500 opt-outs). Given the low numbers of opt-outs and the absence of opposition to the Settlement, the court should that this favorable reaction favors final approval. *See DIRECTV, Inc*., 221 F.R.D. at 529.

D.     **The settlement treats class members equitably.**

Rule 23 further asks courts to assess whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 21

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   treats all Settlement Class Members identically and gives all Settlement Class Members the

2   same opportunity to receive payments using the same distribution method. Each Settlement

3   Class Member is entitled to a proportional share of the Settlement Fund based on their

4   participation in the Tender Offer. *See* SAS ¶ 7(h)(iv).

5           Likewise, the provision of service awards for the Named Plaintiffs is consistent with the

6   equitable treatment of class members. Plaintiffs seek Service Awards of $10,000 for their

7   service to the Class in bringing and prosecuting the lawsuit. SAS ¶ 7(h)(ii). If the Court reduces

8   or does not award a Service Award, that determination shall not affect the Parties' rights and

9   obligations under the Settlement. *Id.* The Ninth Circuit recognizes that service awards given to

10  named plaintiffs are "fairly typical" in class actions. *Rodriguez*, 563 F.3d at 958. Incentive

11  awards serve "to compensate class representatives for work done on behalf of the class, to

12  make up for financial or reputation risk undertaken in bringing the action, and sometimes, to

13  recognize their willingness to act as a private attorney general." *Id.* at 958–59.

14          In evaluating whether the Settlement grants preferential treatment to Plaintiffs, "the

15  court must examine whether there is a 'significant disparity between the incentive awards and

16  the payments to the rest of the class members' such that it creates a conflict of interest." *Spann*

17  *II*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165

18  (9th Cir. 2013)). In arriving at such determination, courts will consider "the number of named

19  plaintiffs receiving incentive payments, the proportion of the payments relative to the

20  settlement amount, and the size of each payment." *In re Online DVD-Rental*, 779 F.3d at 947

21  (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).

22          Here, the requested award is unlikely to create a conflict of interest between Plaintiffs

23  and other Settlement Class Members because the Settlement will remain in full force and effect

24  notwithstanding the Court's decision on the amount of the Service Awards. *See Spann II*, 314

25  F.R.D. at 328–29. Plaintiffs' requested awards were not predicated on the existence of any

26  special treatment or promise from Plaintiffs' Counsel. Dennett Decl. ¶ 28. In addition,

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 22

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Plaintiffs' Counsel estimates that about three-quarters of the eligible Settlement Class Members

2  will receive payments greater than $10,000. *Id.* ¶ 25. Thus, there is not such a disparity between

3  the proposed Service Awards to the Plaintiffs and the rest of the Settlement Class Members that

4  it creates a conflict of interest. In sum, the Settlement treats all Class Members equitably

5  relative to each other, and final approval is appropriate.

6  **CONCLUSION**

7        For the foregoing reasons, the Court should finally certify the Settlement Class and

8  grant final approval to the Settlement.

9        DATED this 25th day of March, 2022.

10                              TOUSLEY BRAIN STEPHENS PLLC

11                              By: s/ *Jason T. Dennett*
12                                  Kim D. Stephens, WSBA #11984
                                    Jason T. Dennett, WSBA #30686
13                                  Cecily C. Jordan, WSBA #50061
                                    Kaleigh N. Powell, WSBA #52684
14                                  1200 Fifth Avenue, Suite 1700
                                    Seattle, WA 98101
15                                  Tel: (206) 682-5600/Fax: (206) 682-2992
16                                  Email: kstephens@tousley.com
                                          jdennett@tousley.com
17                                        cjordan@tousley.com
                                          kpowell@tousley.com
18

19                              McNAUL EBEL NAWROT & HELGREN PLLC
20
                                Avi J. Lipman, WSBA No. 37661
21                              Malaika M. Eaton, WSBA No. 32837
                                Ai-Li Chiong-Martinson, WSBA No. 53359
22                              Michael P. Hatley, WSBA No. 57500
                                600 University Street, Suite 2700
23                              Seattle, Washington 98101
                                Telephone (206) 467-1816
24                              Email: meaton@mcnaul.com
                                       alipman@mcnaul.com
25                                     achiongmartinson@mcnaul.com
                                       mhatley@mcnaul.com
26

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT - 23

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992